PET. EQUITY.

## Secomb, Voorhies, & Co. vs. Nutt, &c.

Case 30.

ERROR TO THE LOUISVILLE CHANCERY COURT.

1. To show the right of a vendor of goods sold, to stop them in *transitu*, it is sufficient to show with reasonable certainty, that is, a probability that the vendee is embarrassed, and not able to make full or general payment of his debts. The admissions of vendee are sufficient to authorize the vendor to stop goods in *transitu*.

2. The order of a vendee for the disposition and sale of goods in *transitu*, before reaching the place of destination, does not effect the right of the vendor to stop such as are not sold, which continues until actually or constructively in possession of vendee.

3. Where only a part of a stock of goods has been received, the right of stoppage in *transitu* as to the remainder is not impaired. *Buckley v. Furness*, 17 *Wendell*, 504.

January 18.

Judge MARSHALL delivered the opinion of the court.

Case stated.

Secomb, Voorhies, & Co., upon their petition filed in the Louisville chancery court, claiming a large debt as due from S. J. Wade, obtained an attachment under which goods, viz: pitch, tar, turpentine, and rosin were seized. During the pendency of the attachment, and after a sale of part of the goods under an interlocutory order to prevent loss, Henry Nutt was made a defendant, and by cross petition claimed the right to stop the same goods *in transitu*, as part of a large quantity sold by him at Wilmington, North Carolina, to S. J. Wade, of Cincinnati, on a credit of ninety days, and at prices amounting to upwards of $7,000, as per invoice filed; and which having been shipped by the vendor to the house of Marsh & Rowlett of

New Orleans, to be by them forwarded to said S. J. Wade at Cincinnati, were in fact re-shipped by them for that destination; and he alleges that the price is still unpaid; that Wade has failed in business; that other portions of the goods may have reached their destination, or at least have not been found by him; and that these goods having been seized at Louisville, and there detained on their way to Cincinnati, are still *in transitu*, and subject to his claim as vendor. He admits, at a subsequent stage of the suit, that he has received $4,200 from Wade, leaving $3,200 still due. Wade admits the allegations on which this claim is founded, but they are denied by Secomb, &c., who, in their pleading, resist the claim by a denial of the claimants right in law and fact, without alleging any new fact by which it might be defeated. And it is contended that there is no sufficient evidence of the alleged failure or insolvency of Wade, and that on this ground the claim of the vendor should have been rejected. This fact appears to have been communicated by Wade to Nutt, who, as may be inferred, was thereby induced to take the journey from Wilmington to Louisville and Cincinnati to look after the goods and the debt. It is also admitted by Wade himself, in his answer, and proved by several witnesses, to have been reported and understood that he had failed; and the plaintiffs have themselves furnished some evidence of his inability to pay his debts by attaching his goods at Louisville on their way to his place of business at Cincinnati, where it would obviously have been much easier, as well as more courteous, for them to have demanded and received payment, if their debtor had not failed in business, or suspended payment. If so much of this evidence as may be called hearsay, and to which exception was taken, be excluded, there is, in our opinion, still enough to sustain the right of the vendor so far as it depends upon the insolvency of the vendee; to establish which, it is not necessary to prove that he is not able to pay a

SECOMB, VOOR-
HIES & Co.
*vs.*
NUTT, &c.

1. To show the right of a vendor of goods sold, to stop them in *transitu*, it is sufficient to show with reasonable certainty, that is, a probability that the vendee is embarrassed, and not able to make full or general payment of his debts. The admissions of vendee are sufficient to authorize the vendors to stop goods in *transitu*.

cent, or any particular sum, but it is sufficient to show that he is unabled to pay his debts.

The true meaning and effect of the preference given to the vendor, while the goods sold on a credit are in *transitu*, is that he is relieved from the necessity of a race for priority, and of sharing with general creditors the proceeds of goods sold by himself. To save him from this scramble it is sufficient to show, with reasonable certainty, that is, with probability, that the vendee is embarrassed and not able to make full or general payment of his debts. And it would seem that the vendees own admission of the fact to his vendor would be sufficient to authorize the latter to act upon it, and should, unless disproved, sustain his claim to stop the goods in *transitu*.

But it is contended, that if the allegations made by Nutt, as above stated, are sufficiently proved, and although they be in themselves sufficient to sustain the right asserted by him, there is an adverse fact established by the proof, which, if his right were otherwise valid, completely negatives and destroys it. One witness states that Marsh & Rowlett, to whom the goods were shipped, to be forwarded to Wade at Cincinnati, were advised by him of the shipment, and directed to sell the goods if a certain price could be obtained, and that they did sell a portion as ordered, but being unable to obtain the required price for the residue they shipped them on various boats to Wade at Cincinnati, as originally directed. It is contended that this order to dispose of the goods, at the intermediate port of New Orleans, put an end to the transit; that it changed the character of Marsh & Rowlett from that of mere forwarders or middlemen to that of special agents for Wade, the vendee; that he, by giving the order, assumed a control and acquired a dominion over the goods which was equivalent to taking possession of them; that although a part only was in fact sold, the order for selling covered the whole, and had the same effect upon the whole; and that, although the unsold residue was transmitted to the place

of original destination, the *transitus* having once terminated the right of the vendor terminated with it, and could not again arise upon a new transit.

But while it is obviously true that so far as the goods were actually disposed of under the orders of Wade, the *transitus* and the right of the vendor in the goods, were both terminated, we do not perceive and are not prepared to admit that the same consequnce followed with regard to that portion of the goods which was not sold but forwarded on to the vendee, and which would have reached him at Cincinnati had they not been intercepted by the attachment at Louisville. In general, the *transitus* continues until the goods have reached the place of destination originally named by the vendee, and have come to his actual or constructive possession. *Chitty on Contracts*, 435; 2 *Kent's Com.*, 543, *note b*, and cases there cited. It was at one time held that even an actual possession, prematurely taken by the vendee himself, would not terminate the *transitus;* but the established doctrine is, that if the vendee intercepts the goods on their passage to him, and takes possession as owner, the delivery is complete, and the right of stoppage gone; and the same consequence is attributed to what is called a constructive possession, and what may be deemed equivalent to an actual possession. There has, (as observed by *Chancellor Kent, 2 Com.*, 545,) been much subtlety and refinement on the question as to the facts and circumstances which would amount to a delivery, sufficient to take away the right; and there is certainly much danger of being lost amid these subtleties and refinements, unless the principle be adhered to, that the intermediate act of the vendee, which is to be deemed sufficient to terminate the *transitus*, must be such as produces an actual and substantial or physical effect upon the condition and destination of the goods.

The order to the house at New Orleans, to sell at a given price, was certainly an assertion of power or dominion over the goods, or with respect to them, and

SECOMB, VOORHIES & Co.
*vs.*
NUTT, &c.

2. The order of a vendee for the disposition and sale of goods in *transstu*, before reaching their place of destination, does not affect the right of the vendor to stop such as are not sold, which continues until actually or constructively in possession of vendee.

so would have been an order directing that they should not be forwarded until insured, or that they should only be forwarded on board of a certain steamboat, or of steamboats over or under a given tonage, or that they should be sent to a particular house, or to a particular wharf in Cincinnati, for the vendee, or that they should be forwarded as speedily as possible, and without being taken to any warehouse in the city of New Orleans. Each of these supposed orders might have some effect upon the condition and transit of the goods, but they would produce no substantial change effecting either the destination of the goods or the right of the vendor. An unconditional order to Marsh & Rowlett to take possession of the goods, on arrival at New Orleans, and to sell them there, or to ship them for sale to Liverpool instead of to Cincinnati, would be a still more decisive assertion and exercise of ownership, which, if obeyed, would necessarily and actually terminate the *transitus* from the vendor to the vendee, because, under the first of these orders the goods, even if they could not be sold, would remain in New Orleans under the mandate of the vendee, and not move in any direction without further orders; and their removal under such orders, even to the original place of destination, would be a new transit just as certainly as would be the change of direction from Cincinnati to Liverpool. But suppose the merchants at New Orleans, instead of obeying this order, should immediately ship the goods to the vendee at Cincinnati, according to the original directions of the vendor. Most obviously the order, so far as the condition and transit of the goods were concerned, would have been a mere *brutum fulmen*, which, though intended to interrupt the transit, would have left the goods to pass on from the vendor to the vendee under the original impulse, and according to their original destination, and therefore could not have amounted to taking possession of them at New Orleans.

The orders to Marsh & Rowlett were not absolute but conditional—to sell at a certain price if they could do so. There were no directions, in case they could not sell the goods, to retain them for further orders; nor does it even appear that the order to sell was accompanied by the direction to forward them on to Cincinnati—if they could not be sold for the designated price. Such directions were unnecessary, because the goods would come to Marsh & Rowlett under orders to be shipped to Cincinnati, and this order would still prevail and control the direction and disposition of the goods, except so far as it was counteracted by the intermediate instructions of the vendee, and by acts done in pursuance of them. And even if the conditional order to sell had been accompanied by one to forward on what should remain unsold, such directions being no more than would otherwise be implied, would not necessarily operate as giving a new impulse or occasioning a new transit, but would *prima facie*, leave the goods, or such as might not be sold, to finish the remaining part of their original destination under the original impulse.

The conditional order to sell at New Orleans was received by Marsh & Rowlett before the arrival of the goods. Suppose they had, upon inquiry, ascertained before the goods came that no part of them could be sold at the required price, or that only a particular quantity could be so sold, and that immediately on the arrival of the goods they had, in the first case, forwarded the whole, or in the other case, such part as could not be sold, to Cincinnati; there would seem to be no plausible ground for supposing, in the first case, that the original *transitus* was ended and a new one commenced at New Orleans, and there seems to be no plausible ground for distinguishing between the two cases, so far as relates to the goods actually forwarded in the latter case, unless it be upon the principle assumed that the termination of the *transitus* as to a part, by taking actual possession or making actual disposition of such part, is in effect

SECOMB, VOORHIES & Co.
*vs.*
NUTT, &c.

3. Where only a part of a stock of goods has been received, the right of stoppage in *transitu* as to the remainder is not impaired. (*Buckley v. Furness,* 17 *Wendell,* 504.)

taking possession of the whole, and thus terminating the *transitus* as to the whole. And as authority for this principle we are referred to a passage in Kent's Commentaries (*vol. 2 page* 545-6,) in the following words : "So a complete delivery of part of an entire parcel or cargo, terminates the *transitus*, and the vendor cannot stop the remainder." In note b. to this passage, the cases in support of it are referred to in 2d *H. Blackstone R.* 504, *and* 4 *Bos. & Pul.* 69 ; and the commentator adds, "In these cases there was an unequivocal act of *possession and ownership,*" and he might have added, over the whole cargo. The same note refers to the case of *Buckley v. Furness,* 17 *Wendell,* 504, as showing that, if only a portion of the goods has been delivered, the right of stoppage as to the residue has been maintained.

In the case thus referred to, (17*th Wendell,*) after the iron had been transported to Plattsburg, one wagon load was taken from the warehouse there by a wagoner employed by the vendee, Titus, and actually delivered to him at Titusville, before the vendor intercepted the residue. The court, in its opinion, stated the two cases in 2 *H. Blackstone, and* 4 *Bos. & Pul.* in each of which it appeared that the vendee had not only taken actual possession of a part of the goods, but had, in one case, entered the entire cargo at the custom house, and actually received a part from the ship, and in the other had weighed the whole at the wharf, under an order from the vendor, and had taken away a part. In the principal case the court say, although the property was all ordered at one time, and forwarded by one conveyance, it was separated on the journey, and from that time the vendor was at liberty to arrest any parcel before the *transitus* as to that parcel was at an end.

In the case before us, the effect of the conditional order to sell was that a part might be sold and the residue forwarded on. In the execution of the order, by the sale of a part and the forwarding of the residue, the goods were in fact separated, and unless the

*transitus* of the whole was terminated, even though no part had been actually sold, we are satisfied that it was not terminated by the sale of a part, the residue being actually forwarded on to its original destination.

Upon the general facts, that the goods were sold at Wilmington, N. C., and there shipped by the vendor to the house of Marsh & Rowlett, at New Orleans, to be by them forwarded to the vendee at Cincinnati, Ohio, and that those now in contest were in fact found by the vendor on their way from New Orleans to the vendee at Cincinnati, and were intercepted by him at the intermediate port of Louisville, the *transitus* was not terminated as to these goods, which had, in fact, become separated from the residue, and *prima facie*, the vendor's right of stoppage still subsisted. It was incumbent on those who denied the right of the vendor, thus *prima facie* established, to make out the specific facts by which it might be destroyed. The mere fact that under a conditional order of the vendee a part of the goods had been sold, is no more effectual than if he had himself received a part of the goods, leaving the rest to pursue their course, and did not of itself operate to terminate the *transitus*, or to destroy the right of stoppage as to the goods now in question. If anything else occurred in New Orleans which had or might have had that effect, it has not been shown, and for all that appears, the transit of the goods now in contest may not have been even delayed at New Orleans by the order of sale.

But it is said, that by that order the character of the merchants at New Orleans was changed from that of mere forwarders to that of special agents of the vendee, and that their reception of the goods, under his order of sale, was equivalent to his taking possession himself, and we are again referred to Kent's Commentaries, (2d vol. page 545,) for the principle suggested by him, that if the delivery to the carrier be for the purpose of conveyance, the right of stoppage continues, but if for the purpose of safe cus-

tody or of disposal on the part of the vendee, and the
middle man is by agreement converted into a special
agent for the buyer, the transit terminates and with it
the right of stoppage. But it appears from the terms
of the proposition that the commentator did not con-
sider the mere fact of the delivery, being for safe cus-
tody or disposal, as in itself conclusively terminating
the transit, for he adds the further condition of an
agreement, converting the middle man into a special
agent, which need not have been added if this con-
version resulted as a necessary consequence from the
delivery for the purpose mentioned.

But waiving this criticism as perhaps too nice, and
conceding that if Marsh & Rowlett had received the
goods merely for safe custody or disposal, they would
have been special agents, and the *transitus* would
have been terminated by their reception of the pos-
session, and conceding that such would have been the
effect of an absolute order to sell or to retain the
goods, we are of opinion that the utmost effect which
can be given to the conditional order, actually given,
is to say that, under its operation, they received the
goods in a double character; and that although the
authority to sell extended conditionally to the whole
of the goods, its effect was limited to that part for
which the required price could be obtained—beyond
this they had no power to sell, and were only author-
ized to forward the goods. And as the order is not
shown to have had any influence whatever upon the
condition or destination of the unsold residue, it would
be indeed a subtle refinement to say that because they
might have sold if they could have obtained the price
demanded, this mere potential and contingent right
should be deemed equivalent to an actual possession
by the vendee, by which valuable and substantial
rights of the vendor are to be defeated. We are not
prepared to admit such a conclusion, and decide that
the fact relied on, if admissible under the issue, is not
entitled to the effect contended for. Nor do we con-
ceive that the fact that the vendor, after asserting his

right of stoppage by his cross petition in this case, obtained from the vendee a considerable payment, leaving more than $3,000 still due, can have any effect upon the case except that of diminishing the extent of his demand, whereby the attaching creditors might possibly be benefited.

Wherefore, the decree is affirmed.

FRY and FIELDS for plaintiffs; RIPLEY for defendants.